**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

STACEY DIASSINOS,

                                            **Plaintiff,**

                    -against-

OLIVEIRA CONTRACTING, INC., et al.,

                                            **Defendants.**

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___ 09/07/2021

**19-CV-07841 (SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff Stacey Diassinos ("Plaintiff") alleges that Defendants' negligence proximately caused a serious injury to her shin because Defendant Thomas Martins ("Martins") failed to exercise due care and caution in operating a vehicle in accordance with the Vehicle and Traffic Laws of the State of New York. Plaintiff seeks $15 million for her physical pain, mental anguish, and economic loss from Martins and his employer, Defendant Oliveira Contracting (together, "Defendants").

Defendants move for summary judgment. They argue that Plaintiff's negligence *per se* was the sole proximate cause of the accident and that Martins was not negligent. Diassinos moves to strike the report and expert testimony of Defendants' expert, Dr. Ali M. Sadegh. She argues that Dr. Sadegh's report is unreliable and prejudicial under Rule 702 and Rule 403 of the Federal Rules of Evidence.

Defendants' motion for summary judgment is DENIED and Plaintiff's motion to strike is DENIED in part.

# BACKGROUND

## I.    The Accident

The facts are taken from Defendants' Local Civil Rule 56.1 Statement of Facts and are undisputed unless otherwise noted.

The accident occurred on July 2, 2019, around noon on East 70th Street between Second and Third Avenues in New York, New York. See Defendant's Rule 56.1 Statement ("R. 56.1 Stmt.") (ECF No. 43, Ex. 25) at ¶ 1. At the time, Plaintiff, a resident of Florida, was visiting her friend, Jennifer Kamrowski, who lived on 70th Street in New York. Id. Just before the accident, Plaintiff was packing a rental car, a black, four-door sedan, like a Toyota. Id. at ¶ 2. The rental car was doubled parked on East 70th Street, with the driver's side of the car facing the roadway. Id. at ¶¶ 2–3. The traffic traveled west to east on the one-way street. Diassinos Dep. Tr. at 15:14-16 (ECF No. 47, Ex. 7). At the time of the accident, Martins was driving a van that was pulling a compressor that was narrower than the van. Martins Dep. Tr. at 21:19-22:2 (ECF No. 42, Ex. 8). Martins was employed as a union laborer with Oliveira Contracting and had driven this van daily for two and a half months before the accident. Id. at 5:14-18; R. 56.1 Stmt. at ¶ 7.

Right before the accident, Plaintiff put a suitcase in the trunk of the rental car and then walked to the driver's side to put a backpack in the back seat of the rental car. See R. 56.1 Stmt. at ¶ 4. Plaintiff explained that she closed the rear driver's side door "onto her body so traffic would pass." Diassinos Dep. Tr. at 29:22-30:9, 40:7-13. Martins asserted that he saw Plaintiff while she was near the rental car, but the parties disagree regarding where Plaintiff was exactly when Martins first noticed her. See R. 56.1 Stmt. at ¶ 8; P's Counter-Rule 56.1 Statement ("Counter-R. 56.1 Stmt.") at ¶¶ 4, 8 (ECF No. 48); Martins Dep. Tr. at 32:17-33:8, 34:2-6. While she was waiting for the traffic to pass, Plaintiff saw the van at least three-car lengths away to the

west. Diassinos Dep. Tr. at 28:21-29:6. The rear driver's side door was not fully open at the time. Id. at 30:23.

Plaintiff does not know what hit her, but her lower left leg was struck after the van passed her while she was standing in between the body of the rental car and the car door. R. 56.1 Stmt. at ¶ 6; Diassinos Dep. Tr. at 57:8-16:22. Specifically, Plaintiff asserts she was hit on her "shin, just above her ankle." Diassinos Dep. Tr. at 58:7-8. Plaintiff was transported via ambulance to the emergency room where she underwent emergency surgery to stabilize her leg. Id. at 68:7-69:21.

Pictures from the accident scene show Defendants' blue van pulling a yellow Kaeser compressor; the compressor appears narrower than the van, but the wheel wells of the compressor stick out farther than the body of the compressor. See, e g., ECF No. 43, Exs. 9, 14, 15; see also R. 56.1 Stmt. at ¶ 7. After the accident, the bottom of the rear driver's side door was caught on the wheel well of the compressor, and the widest part of the door was in contact with the body of the compressor. See, e.g., ECF No. 43, Ex. 14.

The parties contest several facts that are material to Plaintiff's negligence claim as well as what actually caused Plaintiff's injury. Plaintiff believes "it was a part of the trailer that grabbed [her] leg and twisted [her] to the east." Diassinos Dep. Tr. at 31:17-19, 57:8-16. According to Plaintiff, she checked to make sure that there was no oncoming traffic before opening the door "a little bit" to put the backpack into the rear driver's side seat of the car. See id. at 33:20-25, 34:8-10. After putting the backpack in the car, Plaintiff testified that she also looked to the west see if it was safe to shut the door and that was when the traffic began to flow. Id. at 34:15-18. While Plaintiff waited for the traffic to pass in order to shut the door and walk away, she closed the car

door on herself, with the door about a quarter open. Id. at 29:25-30:9, 34:15-24. Multiple vehicles passed before she saw the van and compressor. Id. at 35:19-22.

Defendants assert that Martins first took notice of the rental car when he was approximately 200–300 feet away from it. Martins Dep. Tr. at 31:9-11. Martins testified that he saw Plaintiff when she was behind the rental car at the trunk, and that he never saw her move to the side of the car. Id. at 32:23-25, 36:5, 38:18-20. Martins also asserted that the passenger side of the van was 3 to 4 feet away from where he last saw Plaintiff standing, therefore the side of the compressor would have been 4 to 4½ feet from Plaintiff, leading him to believe that he had sufficient room to pass her safely. Id. at 38:2-17. He further testified that he was going about 10 mph when he passed Plaintiff. Id. at 64:24-25. He also testified that two to three seconds elapsed from the time the front of the van passed where he last saw Plaintiff standing until he heard Plaintiff scream. Id. at 41:3-12. Plaintiff, on the other hand, estimated the speed of the van at 25–30 mph. Diassinos Dep. Tr at 39:3-6. Kamrowski estimated the van was going 5–10 mph, but stated that she does not have a "perception for speed." Kamrowski Dep. Tr. at 19:18-22 (ECF No. 47, Ex. 9).

According to Defendants, the trailer was straight behind the van after the accident, which they contend indicates that the van did not change its direction during the accident. Martins Dep. Tr. at 44:17-20; see ECF No. 55 at 5. Plaintiff contends that the photographs show that "the van and compressor clearly angled to the right." ECF No. 41 at 18; ECF No. 42, Ex. 4.

## II.    Procedural Background

Plaintiff filed the Complaint in August 2019 and amended it in January 2020. See ECF Nos. 5, 20. Plaintiff alleged her injury was solely caused by Defendants' negligence because Martins failed to exercise due care and caution in operating the vehicle in accordance with the

Vehicle and Traffic Laws of the State of New York. See ECF No. 20 at ¶ 15. Plaintiff seeks $15 million for her physical pain, mental anguish, and economic loss. See id. at ¶ 21.

The parties consented to my jurisdiction on February 28, 2020. See ECF No. 28.

Plaintiff moves to strike the report of Defendants' expert, Dr. Sadegh, who opined that Plaintiff's negligence was the sole proximate cause for the accident. See ECF No. 40; ECF No. 42, Ex. 1 (Exhibit A, "Sadegh Report").

Defendants move for summary judgment on the grounds that Plaintiff's negligence was the sole proximate cause of the accident, and that Martins was not negligent at all. See ECF No. 43, Ex. 24.

## DISCUSSION

### I.       Motion to Strike

Plaintiff moves to exclude the report and expert testimony of Defendants' expert, Dr. Ali M. Sadegh, under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), as well as Rule 403.

#### A.       Standard of Admissibility

Expert testimony is admissible when:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In applying Rule 702, a district court must ensure that an expert's testimony "rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. The factors a court should consider, therefore, "depend[] upon the particular circumstances of the particular case at issue." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999).

A court must "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). When conducting its analysis, the district court "must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." Id. at 266 (citing Daubert, 509 U.S. at 595). Nonetheless, "conclusions and methodology are not entirely distinct from one another," and "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Accordingly, a district court may exclude expert testimony if it determines that "there is simply too great an analytical gap between the data and the opinion proffered." Id. (citation omitted).

Exclusion of expert testimony is warranted only when the district court finds "serious flaws in reasoning or methodology." In re Fosamax Prods. Liab. Litig., 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (citing Amorgianos, 303 F.3d at 267); see also Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1995) (noting that there is "a presumption of admissibility of evidence"). Therefore, a trial judge should exclude expert testimony based on reliability concerns only "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213–14 (2d Cir. 2009) (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)) (internal quotation marks omitted). "Other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." Id. at 214 (quoting Boucher, 73 F.3d at 21); see also Raskin v.

Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) (noting that "disputes as to the validity of the underlying data go to the weight of the evidence, and are for the fact-finder to resolve" (citation omitted)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements under Rule 702 are satisfied . . . ." United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).

"Because the purpose of summary judgment is to weed out cases in which there is no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law, it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment," including the admissibility of expert evidence. Raskin, 125 F.3d at 66 (cleaned up). Indeed, as the "gatekeeper for expert testimony," the court "performs the same role at the summary judgment phase as at trial; an expert's report is not a talisman against summary judgment." Id.

**B.     Dr. Ali M. Sadegh's Report and Expert Testimony**

Defendants have proffered Dr. Ali M. Sadegh as an expert in accident reconstruction and biomechanical analysis. See Sadegh Report at 1; ECF No. 42, Ex. 1 at 18–66 (Exhibit B, Dr. Sadegh's Curriculum Vitae). Dr. Sadegh concludes that the accident was caused because Plaintiff opened the driver's side rear door of the rental car (the "Toyota"), not by Martins's operation of the van. See Sadegh Report at 10–11. [1]

Dr. Sadegh listed 11 opinions in his expert report: (1) "The speed of the van/compressor at [the] time of the accident w[as] less than [five] mph"; (2) "The van was traveling at more than

---

[1] The page numbers refer to the pages of the report at the bottom center of the page.

approximately [three] feet away from the Toyota. The driver of the van drove the van as expected with sufficient space from the Toyota"; (3) "The Toyota was double parked without having emergency light[s] on"; (4) Plaintiff "was standing between the door and the car while the front of the van was passing" and "[t]he door was approximately one foot away from the car"; considering the width of Plaintiff's body, "there was more than [two] feet [of] clearance between the van and the door"; if Plaintiff had not opened the door farther out, the van and the compressor "would have passed her without any contact"; (5) Plaintiff "open[ed] the door when the rear end of the van just pas[sed] her," "thinking that she had enough space for opening the Toyota's door"; (6) Plaintiff "was not attentive to the tires of the compressor and opened the door before the compressor had completely passed her"; (7) when the car door was "snagged by the compressor," Plaintiff's "both hands were on the door" and she "tried to hold on to the door and thus, she stepped forward with her left foot contacting the right tire of the compressor[,] ca[u]sing fracture of her distal tibia and fibula"; (8) "[t]he compressor did not sway and was in line with the van and had sufficient distance from the Toyota"; (9) the accident was "a low[-]speed sideswipe contact" and the lateral force "transferred from the van/compressor to the Toyota was insignificant; (10) Plaintiff "was inattentive to the slow moving vehicle (the van) and in particular to the tires of the compressor"; and (11) "the van had sufficient distance from the Toyota and was passing through at a low speed," so Plaintiff's injuries "would not have occurred had [she] been attentive to the slow-moving traffic and had not opened the Toyota's door before the compressor had passed." See Sadegh Report at 11.

Plaintiff challenges both the reliability and relevance of Dr. Sadegh's expert testimony.[2] Dr. Sadegh has been deemed to be a qualified expert in this field by other courts in this District,

---

[2] As Defendants observe, Plaintiff filed a 30-page memorandum of law in support of her motion to strike, in violation of this Court's Individual Rules of Practice Part 2(e) (effective April 1, 2020), which requires

and Plaintiff does not challenge his qualifications for the purposes of her motion to strike. See ECF No. 42, Ex. 1 at 1–2; ECF No. 41 at 16.

### 1. Plaintiff's Reliance on the Declaration of Michael O'Connor

Defendants challenge Plaintiff's reliance on Michael O'Connor, a veteran of the Accident Investigation Squad of the New York City Police Department, to rebut the findings in Dr. Sadegh's expert report. See ECF No. 49 at 2–4. Defendants assert that O'Connor's declaration should be precluded because Plaintiff disclosed him as a liability expert in an untimely manner. Id. Plaintiff denies that O'Connor's declaration is a liability expert report, contending that "he is not opining on the facts or liability, but discussing the science of accident reconstruction, and explaining factual foundations and accepted methods." See ECF No. 54 at 3. In his declaration, O'Connor explains that he was retained "to study and opine on the methods employed" by Dr. Sadegh. See ECF No. 42, Ex. 2 at ¶ 6. In brief, O'Connor attacks Dr. Sadegh's opinion as unreliable and not based on acceptable scientific methods. O'Connor does not render an opinion about how the accident occurred. His opinion merely identifies areas ripe for cross-examination. Indeed, in response to the O'Connor Declaration, Dr. Sadegh submitted a supplemental declaration, which responds to some of O'Connor's challenges.

Because O'Connor is not a testifying expert, he was not required to submit an expert report. Instead, the Court considers O'Connor an expert employed only for trial preparation. See Fed. R. Civ. P. 26(b)(4)(D). In this capacity, he is qualified to consult with Plaintiff's counsel, but he is not qualified to render any opinion that the Court can rely upon. Accordingly, O'Connor's declaration is inadmissible for purposes of the Court's consideration. The Court,

memoranda of law to be "limited to 25 double-spaced pages." Plaintiff filed her over-long brief without permission and is admonished to adhere to page limits in the future.

however, would reach the same conclusion with respect to the admissibility of Sadegh's testimony even if the O'Connor declaration were considered.

### 2.   Reliability of the Proposed Testimony of Dr. Sadegh

Plaintiff challenges nearly all of Dr. Sadegh's opinions on the basis that they fail to satisfy Rule 702 and the standard established in <u>Daubert</u>. Specifically, Plaintiff argues that opinions 1–8 and 10–11 are not reliable because they lack a factual basis or are not based on any scientific methodology.

Plaintiff does not challenge Dr. Sadegh's qualifications. ECF No. 41 at 16. Dr. Sadegh holds several degrees in mechanical engineering and is currently the Founder and Director of The Center for Advanced Engineering Design and Development and a Professor of Mechanical Engineering within the Department of Mechanical Engineering at The City College of the City University of New York. ECF No. 42, Ex. 1 (Exhibit B). As such, he "has extensive experience, education, and knowledge in the . . . engineering field and also reviewed relevant literature." <u>Figueroa v. Boston Scientific Corp.</u>, 254 F. Supp. 2d 361, 368 (S.D.N.Y. 2003). Accordingly, the reliability inquiry may "'focus upon personal knowledge and experience' of the expert." <u>Bah v. Nordson Corp.</u>, No. 00-cv-09060 (DAB), 2005 WL 1813023, at *7 (S.D.N.Y. Aug. 1, 2005) (quoting <u>Kumho Tire</u>, 527 U.S. at 150). In addition, Dr. Sadegh's area of expertise is well-established such that the Court's gatekeeping role is not concerned about "novel scientific evidence" or opinion evidence "approaching the outer boundaries of traditional scientific and technological knowledge." <u>Figueroa</u>, 254 F. Supp. 2d at 368–69 (first quoting <u>Daubert</u>, 509 U.S. at 585, and then quoting <u>Lappe v. Am. Honda Motor Co.</u>, 857 F. Supp. 222, 228 (S.D.N.Y. 1994)). Therefore, generally, doubts as to Dr. Sadegh's testimony should be resolved through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof[, which] are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 596.

The majority of Plaintiff's challenges are better left for cross-examination and jury arguments. For example, Plaintiff challenges Dr. Sadegh's conclusion that the van was travelling at five miles per hour because it is inconsistent with the deposition testimony and because Dr. Sadegh did not support that conclusion with scientific methodology. But in his expert report, he notes the minor damage of the vehicle and the testimony of Ms. Kamrowski as a basis for his conclusion. Dr. Sadegh's supplemental declaration provides further analysis. Similarly, Plaintiff challenges various assumed measurements because they were not based on scientific methods such as photogrammetry to measure the distance between the van and the Toyota or any studies to estimate Plaintiff's body width. These challenges are fair but are a ground for cross examination, not exclusion. Indeed, Plaintiff may consult with O'Connor to prepare for such examination to test the conclusions that Dr. Sadegh renders.

Certain conclusions, however, should be excluded because they are either improper bolstering of facts or express an opinion for which Dr. Sadegh is plainly not qualified. <u>Boucher</u>, 73 F.3d at 21 ("[E]xpert testimony should be excluded if it is speculative or conjectural." (citation omitted)). Dr. Sadegh asserted that "the Toyota was double parked without having emergency light[s] on." Sadegh Report at 11. The fact that the Toyota was double parked is uncontested, and Plaintiff, Martins, and Kamrowski all testified that they did not recall if the emergency lights of the Toyota were on. <u>See</u> R. 56.1 Stmt. at ¶ 3; Diassinos Dep. Tr. at 37:9-14; Martins Dep. Tr. at 43:11-13; Kamrowski Dep. Tr. at 49:22-23. Thus, this opinion is speculative and does not assist the trier of fact.

Dr. Sadegh also weaves into his expert conclusions about the Plaintiff's mental state. He concludes that she was "not attentive" or was "thinking that she had enough space." Sadegh Report at 11. These opinions on Plaintiff's state of mind are "guess[es] about what happened . . . not based upon sufficient facts or data, as is required of expert testimony." Est. of Ratcliffe v. Pradera Realty Co., No. 05-cv-10272 (JFK), 2008 WL 53115, at *5 (S.D.N.Y. Jan. 2, 2008) (cleaned up); Colon v. Abbott Labs., 397 F. Supp. 2d 405, 413–14 (S.D.N.Y. 2005) (excluding expert testimony and granting summary judgment where the expert provided speculative opinions on causation). These opinions are thus unreliable as to whether Plaintiff negligently opened the Toyota's door and caused the accident. Dr. Sadegh may, however, testify to how he believes the accident occurred based on his experience as a mechanical engineer. Thus, his opinion about how the car door was hit and what Plaintiff's body likely did in response to that force is within his area of expertise and should be subject to cross examination.

Thus, the Court strikes as inadmissible Dr. Sadegh's opinion that the Toyota was double parked without having emergency lights on (Opinion 3); that Plaintiff "was thinking she had enough space for opening the Toyota's door" (Opinion 5, in part); that Plaintiff was "not attentive" (Opinion 6, in part), "inattentive" (Opinion 10, in part), or that the accident would not have occurred if Plaintiff was "attentive" (Opinion 11, in part). All other opinions are admissible and should be subject to cross examination.

Finally, Dr. Sadegh's testimony easily satisfies the relevance standard. For expert testimony to be admissible, the court must conclude that it can "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a); see Daubert, 509 U.S. at 597; see also Scott v. Chipotle Mexican Grill, Inc., 315 F.R.D. 33, 43 (S.D.N.Y. 2016) (citing In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004)). Evidence is

relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The <u>Daubert</u> Court described this consideration as one of "fit," requiring a "valid scientific connection" between the subject matter of the expert's testimony and the factual issues to be determined by the jury. <u>Daubert</u>, 509 U.S. at 591–92.

Expert testimony, however, "should not merely reiterate arguments based on inferences that can be drawn by laypersons; those can properly be advanced by the parties in their summations." <u>In re Zyprexa Prods. Liab. Lit.</u>, 489 F. Supp. 2d 230, 283 (E.D.N.Y. 2007). Neither should it comprise conclusory testimony that "undertakes to tell the jury what result to reach . . . [or] attempts to substitute the expert's judgment for the jury's." <u>Id.</u> (quoting <u>United States v. Duncan</u>, 42 F.3d 97, 101 (2d Cir. 1994)) (alterations in original); <u>see also</u> <u>Duncan</u>, 42 F.3d at 101 ("In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion."). Rather, expert testimony is relevant if it is "likely to substantially assist the average person in understanding the case—even if it simply explains facts and evidence already in the record." <u>In re Zyprexa</u>, 489 F. Supp. 2d at 283.

Finally, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." <u>United States v. Bermudez</u>, 529 F.3d 158, 161 (2d Cir. 2008) (quoting Fed. R. Evid. 403). District courts have broad discretion to balance probative value against possible prejudice. <u>Id.</u> (citing <u>United States v. LaFlam</u>, 369 F.3d 153, 155 (2d Cir. 2004)).

Having excluded as unreliable Dr. Sadegh's opinions regarding the double-parked vehicle and the absence of emergency lights, as well as his opinion that the accident was caused by Plaintiff's negligence (or inattentiveness), the balance of Dr. Sadegh's opinion will assist the

jury in understanding the accident. Accordingly, Plaintiff's motion to strike Dr. Sadegh's expert testimony in full is denied.

## II.      Summary Judgment

Defendants move for summary judgment, asserting that Plaintiff failed to establish a prima facie case of Martins's negligence, and that Plaintiff's negligence in opening the car door, in violation of Vehicle and Traffic Law ("V.T.L.") § 1214, is negligence *per se* and the sole proximate cause of the accident. See ECF No. 43, Ex. 24. Plaintiff contends Martins breached his duty as a driver under V.T.L. § 1146(a), that she did not violate V.T.L. § 1214, and that the presence of disputed material issues of fact precludes summary judgment. See ECF No. 46.

### A.  Standard of Review under Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party bears the initial burden of establishing that there are no material facts in dispute and must provide "affirmative evidence" from which a factfinder could return a verdict in its favor. Id. at 257. Then "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does

not extend to issue-resolution." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. See Scott v. Harris, 550 U.S. 372, 378 (2007). Summary judgment is improper if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). To create a disputed fact sufficient to deny summary judgment, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). Instead, the response "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation and internal quotation marks omitted). Summary judgment is only warranted when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [and thus] there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

For personal injury claims based on negligence, their "fact-dependent nature" means that they "must usually be resolved by the fact-finder." Duncalf v. Swamsington, No. 05-cv-07020 (PAC), 2007 WL 2387968, at *2 (S.D.N.Y. Aug. 21, 2007) (citing Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 315 (1980)). "[A] defendant may obtain summary judgment by demonstrating the plaintiff's conduct was the sole proximate cause of the accident and an absence of evidence on the defendant's negligence." Reyes v. United States, No. 19-cv-05325

(KHP), 2021 WL 1639370, at *4 (S.D.N.Y. Apr. 26, 2021) (citing Allison v. Rite Aid Corp., 812 F. Supp. 2d 565, 568 (S.D.N.Y. 2011)).

### B.   New York Negligence Law

When a court's jurisdiction is based on diversity, the law of the forum state is applied. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Allison, 812 F. Supp. 2d at 568 ("Because the parties have relied on New York State law in presenting their arguments to this Court, we assume that New York law applies to this diversity action.").

Plaintiff alleges that Martins was negligent in the accident and breached his duty as a driver under V.T.L. § 1146(a). See ECF No. 46 at 15–16; ECF No. 20. Defendants argue that Plaintiff has failed to establish a prima facie case of Martins's negligence. See ECF No. 43, Ex. 24. Pursuant to V.T.L. § 1146(a),

> Notwithstanding the provisions of any other law to the contrary, every driver of a vehicle shall exercise due care to avoid colliding with any bicyclist, pedestrian, or domestic animal upon any roadway and shall give warning by sounding the horn when necessary.

The "failure to obey the Vehicle and Traffic Law constitutes negligence *per se*." Peralta v. Quintero, 20 F. Supp. 3d 462, 464–65 (S.D.N.Y. 2014) (citing Barbieri v. Vokoun, 72 A.D.3d 853, 856 (2d Dep't 2010)), adhered to as amended, No. 12-cv-03864 (FM), 2015 WL 362917 (S.D.N.Y. Jan. 26, 2015), aff'd, 669 F. App'x 64 (2d Cir. 2016). In the alternative, Plaintiff can also allege negligence by proving that Martins (1) owed Plaintiff a duty of care; (2) breached that duty; and (3) that the breach proximately caused Plaintiff's injury. See Kane v. United States, 189 F. Supp. 2d 40, 51 (S.D.N.Y. 2002). Drivers in New York have the duty "to operate their automobiles with reasonable care, taking into account the actual and potential dangers existing from weather, road, traffic and other conditions." Peralta, 20 F. Supp. 3d at 464 (quoting Hodder v. United States, 328 F. Supp. 2d 335, 341 (E.D.N.Y. 2004)). Courts also "impose upon every

driver a requirement to see that which she 'should have seen' through the proper use of her senses." Thomas v. O'Brien, No. 08-cv-03250 (RLM), 2010 WL 785999, at *3 (E.D.N.Y. Feb. 26, 2010) (first citing Goemans v. Cty. of Suffolk, 57 A.D.3d 478, 479 (2d Dep't 2008), then citing Miller v. Richardson, 48 A.D.3d 1298, 1300 (4th Dep't 2008)). "While negligence cases do not generally lend themselves to resolution by motion for summary judgment, such a motion will be granted where . . . the facts clearly point to the negligence of one party without any fault or culpable conduct by the other party." Spence v. Lake Serv. Station, Inc., 13 A.D.3d 276, 277–78 (1st Dep't 2004) (quoting Morowitz v. Naughton, 150 A.D.2d 536, 537 (2d Dep't 1989)).

Of course, an accident can have multiple proximate causes, and under N.Y. CPLR § 1411, "liability is split between plaintiffs and defendants based on the relative culpability and causal significance of their conduct." Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc., 113 F.3d 296, 300 (2d Cir. 1997) (citing N.Y. CPLR § 1411). Here, Defendants argue that Plaintiff was negligent *per se* because she violated V.T.L. § 1214. See ECF No. 43, Ex. 24 at 7–9. Pursuant to V.T.L. § 1214,

> No person shall open the door of a motor vehicle on the side available to moving traffic unless and until it is reasonably safe to do so, and can be done without interfering with the movement of other traffic, nor shall any person leave a door open on the side of a vehicle available to moving traffic for a period of time longer than necessary to load or unload passengers.

"New York courts have recognized that, as a general matter, a person who opens a vehicle door into the path of oncoming traffic violates V.T.L. § 1214 and is therefore negligent." Reyes, 2021 WL 1639370, at *3 (citation omitted). Defendants also argue that Plaintiff's negligence is the sole proximate cause of her injury, negating proximate causation between Martins's action and Plaintiff's injury. A defendant can establish that he is entitled to summary judgment if he negates proximate causation. See Borges v. Zukowski, 22 A.D.3d 439, 439 (2d Dep't 2005).

### C. Discussion

Plaintiff alleges that Defendant Martins's negligence was the sole proximate cause of Plaintiff's injury. Plaintiff asserts that Martins operated the van at an excessive rate of speed, failed to keep a safe distance from Plaintiff, failed to bring the van to a stop to avoid injuring Plaintiff, and violated New York State Vehicle and Traffic Law. Defendants argue that Plaintiff violated V.T.L. § 1214, which constitutes negligence *per se*, that Plaintiff's action is the sole proximate cause of the accident, and that there is no evidence that Martins was negligent. Thus, the question before the Court is whether, drawing all reasonable references in favor of Plaintiff, a reasonable juror could find that Plaintiff's conduct was not the sole proximate cause of the accident.

The undisputed evidence shows that, before the accident, Plaintiff closed the rental car's door onto her body so traffic could pass, and she saw Defendants' van at least three-car lengths away to the west. Diassinos Dep. Tr. at 28:21-29:6, 29:22-30:9, 40:7-13. Plaintiff's left shin was struck after the van had passed her while she was standing in between the body of the rental car and the rear driver's side passenger door. Id. at 30:20. Specifically, Plaintiff asserts she was hit on her "shin, just above her ankle." Diassinos Dep. Tr. at 58:7-8. After the accident, the bottom of the door was caught on the wheel well of the compressor, and the widest part of the door was in contact with the body of the compressor. See, e.g., ECF No. 43, Ex. 14.

Plaintiff testified that she checked the traffic before opening the door of the rental car and putting the backpack into the Toyota, and she checked the traffic again after putting the backpack in the car. Diassinos Dep. Tr. at 33:20-25, 34:8-10. She closed the door onto her body because she saw the traffic had begun heading east; she waited for the traffic to pass so that she could

shut the door and walk away. Id. at 29:25-30:9, 34:15-24. Plaintiff also testified that multiple

vehicles passed before she saw the van and compressor. Id. at 35:19-22.

A court sitting in summary judgment "should not . . . assess the credibility of witnesses"

because "these determinations are within the sole province of the jury." Hayes v. N.Y.C. Dep't

of Corr., 84 F.3d 614, 619 (2d Cir. 1996) (first citing United States v. Rem, 38 F.3d 634, 644 (2d

Cir. 1994), and then citing Azrielli v. Cohen L. Offs., 21 F.3d 512, 517 (2d Cir. 1994)). If

Plaintiff's credibility is assumed, her testimony demonstrates that she was attentive to the traffic

before the accident for a time long enough to let multiple vehicles pass before she was struck by

Defendants' vehicle. Plaintiff did not mention any potential reason why she might not be able to

focus on the traffic. Cf. Reyes, 2021 WL 1639370, at *4 (noting that Plaintiff was not attentive

to the traffic because she was late for school and was focused on closing the car door). Nor did

she indicate that she "did not see what she should have seen." See id. at *6. Moreover, Plaintiff

never mentioned that she opened the Toyota's door again before she was struck. The evidence in

this case does not indisputably demonstrate that Plaintiff negligently "open[ed] the door of a

motor vehicle on the side available to moving traffic" when it is not "reasonably safe to do so"

according to V.T.L. § 1214. Plaintiff testified that she checked the traffic before and after putting

the backpack into the backseat of the Toyota, and she was injured when she was waiting for the

traffic to pass. Diassinos Dep. Tr. at 33:20-35:4. Plaintiff's testimony provides a nonnegligent

explanation of what happened. Compare Paulino v. MTA Bus Co., 190 A.D.3d 652, 652 (1st

Dep't 2021) (concluding that summary judgment was improper when there was "evidence that

plaintiff opened the door while traffic was stopped and that there was sufficient room for cars to

pass without hitting him or his car," even though the door was "on the side available to moving

traffic"), with Rincon v. Renaud, 186 A.D.3d 1551 (2d Dep't 2020) (granting summary judgment

because the passenger failed to provide a nonnegligent explanation for opening the door in violation of V.T.L. § 1214 and hitting a passing bicyclist). Drawing all reasonable references in favor of Plaintiff, a reasonable juror could find that Plaintiff did not violate V.T.L. § 1214 and was not negligent *per se*. See Reyes, 2021 WL 1639370, at *5 (collecting cases involving the opening of a car door into traffic).

Yet even if a jury could find Plaintiff negligent, that is not enough for Defendants to prevail on their summary judgment motion. Defendants also need to show that Plaintiff's conduct was "the *sole* proximate cause of the accident" and "an absence of evidence [of] the defendant's negligence." Id. at *4 (emphasis added); see Gray v. Wackenhut Services, Inc., 446 F. App'x 352, 354 (2d Cir. 2011) (finding that summary judgment was warranted where undisputed evidence demonstrated Plaintiff's negligence *per se* due to a violation of V.T.L. § 1162).

Here, there are at least three genuine issues of fact remaining for the jury to decide, and all of them concern material facts that could lead a reasonable juror to find Martins negligent. Cf. Smith v. City of New York, 179 A.D.3d 500, 501 (1st Dep't 2020) (holding that the plaintiff failed to raise any triable issue of fact as to whether defendant bus driver was negligent in failing to see what was there to be seen). First, genuine issues of fact exist as to whether the clearance between the van and the rental car was enough for the van and compressor to pass Plaintiff without striking her. Martins testified that he believed the passenger side of the van was 3–4 feet away from where he last saw Plaintiff standing, meaning the side of the compressor would have been 4–4½ feet from Plaintiff, and the reason why he thought he had enough space to pass Plaintiff safely. But Plaintiff's analysis suggests that the compressor was only 14 to 16 *inches* from the rental car. ECF No. 41 at 17. If Martins misjudged the clearance between the vehicles, a

reasonable jury could find that he did not use his "senses" properly and was thus negligent. See Moe v. United States, 668 F. Supp. 2d 497, 507 (W.D.N.Y. 2009) (citing LeClaire v. Pratt, 270 A.D.2d 612, 613 (3rd Dep't 2000) (holding that the motorist, with proper use of her senses, should have seen what was approaching so closely as to present an "immediate hazard")).

Second, genuine issues of fact exist as to Martins's speed before the accident. Plaintiff estimated the van's speed at 25–30 miles per hour, but Martins testified that he was going about 10 miles per hour. A reasonable jury could find that Martins traveled at a speed not slow enough for him to accurately estimate the clearance between the vehicles and to bring the van to a stop before Plaintiff was struck.

A third genuine issue of fact exist as to whether Martins changed the direction of the van in a failed attempt to avoid Plaintiff. Martins suggests that the van did not change its direction during the accident, leaving the trailer straight behind it after the accident. Martins Dep. Tr. at 44:20. Plaintiff contends that the photos show that the van and compressor clearly angled to the right and points to Kamrowski's testimony, where she hypothesized that the van veered to the left to get around the rental car, making the compressor move to the right. Kamrowski Dep. Tr. at 23:3-9. Dr. Sadegh asserts that the van was parallel with the Toyota. Sadegh Report at 7. If the jury finds that Martins veered the van and caused the compressor to veer right, his actions, rather than Plaintiff's, could be found to have violated the VTL by failing to "exercise due care to avoid colliding with" a pedestrian." V.T.L. § 1146(a).

Based on the disputed issues of fact regarding the distance between the vehicles, the speed of the van, and the possible direction change of the van, the "record demonstrates questions of fact as to [Martins's] comparative" or sole negligence, thereby precluding summary judgment. Nevarez v. S.R.M. Mgmt. Corp., 58 A.D.3d 295, 297–98 (1st Dep't 2008).

Interpreting the facts in a light most favorable for Plaintiff, a reasonable jury could find Martins

negligent as a driver. Therefore, Defendants should not be granted summary judgment.

## CONCLUSION

The Court GRANTS in part and DENIES in part Plaintiff's Motion to Strike and

DENIES Defendants' Motion for Summary Judgment. The Clerk of Court is respectfully

directed to terminate the motions at ECF Nos. 40 and 43.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      September 7, 2021
            New York, New York